IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SCARLENA NAICKER and KOLBY )
OSWALD, on behalf of themselves and all )
others similarly situated, )
 )
 ) Civil Action No. 2:14-cv-01140
 Plaintiffs, )
 ) Judge Mark R. Hornak
v. )
 )
WARRIOR ENERGY SERVICES, INC. )
d/b/a WARRIOR SNUBBING SERVICES., )
 )
 Defendant.

## OPINION

**Mark R. Hornak, United States District Judge**

This is a case brought by two former employees of Warrior Energy Services, Inc. ("Warrior") as a collective action under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA") and as a Rule 23 class action under the Pennsylvania Minimum Wage Act ("PMWA"), 43 Pa. Stat. Ann. § 333.101 *et seq.* The Plaintiffs, Scarlena Naicker and Kolby Oswald, were "snubbers" for Warrior (out of the district in Belle Vernon, Pennsylvania) from February 2011 until about March 2013, when Warrior got out of the snubbing business. Plaintiffs claim they were wrongfully denied overtime wages for snubbing work[1] they did. According to them, Warrior incorrectly classified its snubbers as exempt (under the Motor Carrier Act ("MCA") Exemption, 29 U.S.C. §213(b)(1)) from the overtime requirements of the FLSA. Plaintiffs say that they drove a number of "little trucks," i.e., vehicles weighing less than 10,000

---

[1] As Plaintiffs explain, "snubbing involves sending a metal pipe into pressurized oil and gas wells for various purposes, such as to deepen the well, to remove fluids and debris that have accumulated in the drill hole, or to clear out plugs that were inserted into the well in connection with the drilling operations." ECF No. 20, at 3–4.

pounds, making them non-exempt under a complex statutory scheme that involves the FLSA, the MCA, and its amendatory counterparts, SAFETEA—LU,[2] and the SAFETEA—LU TCA.[3]

The Court blazed this trail in its earlier opinion in *Dunkel v. Warrior Energy Servs., Inc.*, 304 F.R.D. 193 (W.D. Pa. 2014). In *Dunkel*, the issues, parties, lawyers, statutory provisions, arguments, and pretty much everything else, were the same as in this case.[4] The difference? *Dunkel* involved "coil tubers," and this case deals with "snubbers." What's the difference between a coil tuber and a snubber? According to the parties, not all that much.[5]

Plaintiffs are now asking this Court to "conditionally certify" this collective action for the purpose of sending out notice to potential opt-in plaintiffs. ECF No. 19. Although this is essentially round two of the same fight,[6] the parties approached the issues with heartily-renewed vigor and filed a total of five (5) briefs on the subject—ECF Nos. 20, 34, 37, 43, and 46—along with declarations and appendices and exhibits and depositions—ECF Nos. 21–23, 34-1–34-4, 39, 43-1–43-3, 49, and 50—and the Court has reviewed everything, and entertained oral argument. For the reasons that follow, the Court concludes that notice should be sent to potential "opt-ins," but only those who worked out of the Warrior district set up in Belle Vernon, Pennsylvania.

---

[2] Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users (SAFETEA–LU), Pub. L. No. 109–59, 119 Stat. 1144 (2005).

[3] SAFETEA—LU Technical Corrections Act of 2008, Pub. L. No. 110–244, 122 Stat. 1572 (2008).

[4] Perhaps a paradigm example of "déjà vu, all over again." *Funayama v. Nichia Am. Corp.*, No. 12-5406, 2014 WL 4384526, at *1 (E.D. Pa. Sept. 4, 2014).

[5] According to the Plaintiffs' Complaint, the differences are minimal: "the pipe used in snubbing is normally larger than the pipe used in coil tubing, and is not spooled off a drum . . . ." ECF No. 1, at ¶ 17. And snubbing is required "when lighter intervention techniques (like the coil tubing) do not have the strength or durability to get the job done or where the well is too deep for coil tubing." *Id.* at ¶ 18.

[6] Or maybe round five. *See also Dunkel v. Superior Energy Servs.*, No. 13-cv-695-MRH; *Cerini v. Warrior Energy Servs.*, No. 14-cv-637-MRH; *Dull v. Integrated Prod. Servs.*, 14-cv-1437-NBF; *Hagans v. Integrated Prod. Servs.*, 15-cv-80-MRH.

2

I. **BACKGROUND**

Naicker and Oswald were snubbers for Warrior until March 15, 2013, Naicker having started in April 2012 and Oswald in February 2011. ECF No 1, at ¶¶ 11 and 13. They both worked out of the Belle Vernon, Pennsylvania district and worked at natural gas well sites in Pennsylvania, West Virginia, Ohio, and New York. *Id.* at ¶¶ 12 and 14. They were usually assigned to a 3-person crew consisting of a supervisor (whose exempt status under the FLSA/PMWA Plaintiffs do not contest), and two snubbers (an operator and a "hand"). *Id.* at ¶¶ 19–20. According to Plaintiffs, from around August 2011 until about March 15, 2013, Warrior employed approximately 50-60 snubbers (not including supervisors) out of the district in Belle Vernon, Pennsylvania.

During the relevant time period, Warrior provided snubbing services from two additional districts: Richardson, North Dakota, and Decatur, Texas. ECF No. 34-2, at ¶10. Neither of the Plaintiffs worked in these other shops.[7] Plaintiffs allege that they were wrongfully denied overtime wages because Warrior misclassified them as exempt under the MCA. ECF No. 1, at ¶¶ 79–90. Warrior's snubbing operations used a spread of vehicles that included a snubbing unit and one or two pick-up trucks. ECF No. 21, at ¶ 44; ECF No. 22, at ¶ 18. The Plaintiffs say they used the small pick-up trucks (weighing less than 10,000 pounds) regularly for lengthy transportation to far-flung job sites, ECF No. 21, at ¶¶ 37, 39–42; ECF No. 22, at ¶¶ 10, 14, for "hot shots," which are supply runs, ECF No. 21, at ¶¶ 39–42; ECF No. 22, at ¶¶ 14, and for fuel runs, ECF No. 21, at ¶¶ 47–50; ECF No. 22, at ¶¶ 18, 23. According to Plaintiffs, the use of these "smaller vehicles"—that is, pick-up trucks weighing less than 10,000 pounds—pulls them

---

[7] In her Declaration, Naicker asserts that, in addition to being a snubber for Warrior, she also worked as an administrator, during which time she twice travelled to a Warrior district in North Dakota. ECF No. 21, at ¶¶ 26–27.

3

outside the MCA exemption and puts them back within the contours of the FLSA, under which they would be entitled to overtime.[8]

## II. MOTION FOR "CERTIFICATION"

### A. Legal Standard

"The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract" and "gives employees the right to bring a private cause of action on their own behalf and on behalf of other employees similarly situated for specified violations of the FLSA," which is known as a "collective action." *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1527 (2013) (internal quotation marks omitted). The Third Circuit has explained:

> Courts in our Circuit follow a two-step process for deciding whether an action may properly proceed as a collective action under the FLSA. Applying a fairly lenient standard at the first step, the court makes a preliminary determination as to whether the named plaintiffs have made a modest factual showing that the employees identified in their complaint are similarly situated. If the plaintiffs have satisfied their burden, the court will "conditionally certify" the collective action for the purpose of facilitating notice to potential opt-in plaintiffs and conducting pre-trial discovery. At the second stage, with the benefit of discovery, a court following this approach then makes a conclusive determination as to whether each plaintiff who has opted in to the collective action is in fact similarly situated to the named plaintiff. This step may be triggered by the plaintiffs' motion for "final certification," by the defendants' motion for "decertification," or, commonly, by both. If the plaintiffs succeed in carrying their heavier burden at this stage, the case may proceed on the merits as a collective action.

*Camesi v. Univ. of Pittsburgh Med. Ctr.*, 729 F.3d 239, 243 (3d Cir. 2013) (internal citations and quotation marks omitted).

---

[8] The Third Circuit recently issued an opinion on point in *McMaster v. E. Armored Servs., Inc.*, 780 F.3d 167, 169 (3d Cir. 2015), which explained that, under the TCA, a "covered employee" is "an employee of a motor carrier whose job, 'in whole or in part,' affects the safe operation of vehicles lighter than 10,000 pounds, except vehicles designed to transport hazardous materials or large numbers of passengers," and that covered employees are entitled to overtime. *Id.* at 170. The Third Circuit declined to "now affix a firm meaning to the term 'in part,'" concluding that, on the facts of that case, the definition of "in part" was "certainly satisfied by McMaster, who spent 49% of her days on vehicles less than 10,000 pounds." *Id.* at 170 n.4. The Third Circuit also left unanswered the question whether an employee is "entitled to overtime only for those workweeks in which she actually performed work on vehicles lighter than 10,000 pounds." *Id.* at 169 n.1

4

The first stage looks at "whether 'similarly situated' plaintiffs do in fact exist, while at the second stage, the District Court determines whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs." *Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 536 n.4 (3d Cir. 2012) (quoting *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010)) (internal quotation marks omitted). As the *Zavala* Court explained:

> "conditional certification" is not really a certification. It is actually the district court's exercise of its discretionary power, upheld in *Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165, (1989), to facilitate the sending of notice to potential class members, and is neither necessary nor sufficient for the existence of a representative action under the FLSA.

*Id.* at 536 (internal citations, quotation marks, and alterations omitted).

### B. Discussion

The Court concludes that the Plaintiffs here have met their modest burden of demonstrating that other similarly situated employees exist. Both Plaintiff-Declarants worked out of the Belle Vernon, Pennsylvania district. As explained, the two Declarations allege that Naicker and Oswald used "small vehicles" on a regular basis, as did other snubbers who worked out of the Belle Vernon, Pennsylvania district. *See* ECF No. 21, at ¶¶ 37–41, 45–48. Oswald alleges similar conditions in her declaration. *See* ECF No 22, at ¶¶ 9–22. Under the analysis more fully set forth in *Dunkel*, that is enough.[9]

But whether the Plaintiffs have submitted competent evidence into the record for any of the other districts is a different question. Warrior provided snubbing services out of three (3)

---

[9] The Defendant opposes any notice being sent as to any of Belle Vernon, Decatur, and Richardson. It principally contends that there are so many overarching, individualized, discrete, and particularized employee-by-employee inquiries that there are pretty much no similarly-situated snubbers. ECF No. 34, at 15–19. The reasons so articulated may well turn out to be tailor-made for the Defendant's soon-to-come efforts to defeat collective treatment of the case at "step two" of our Circuit's two-step analysis after further discovery, but, in the Court's estimation, it is then and not now that these arguments will have vitality, if at all. As the Court concluded when addressing what were essentially the same arguments in *Dunkel*, "[w]hile it may turn out to be true that the exact determination of uncompensated overtime hours will require the Court to make individual assessments . . . it would be inappropriate to deny conditional 'certification' now on that basis." *Dunkel v. Warrior Energy Servs., Inc.*, 304 F.R.D. 193, 201 (W.D. Pa. 2014).

5

districts in the United States. ECF No. 50, at 10. The Declarations of Naicker and Oswald do not sufficiently establish that similarly situated employees worked out of the districts in Richardson, North Dakota and Decatur, Texas.

Naicker's Declaration testimony fails to assert that employees in the Richardson, North Dakota district regularly used small vehicles as part of their day to day snubbing work. Rather, her Declaration explains that she travelled to the North Dakota district twice in the capacity of an administrator (not as a snubber) to train other administrators "to handle the administrative tasks that were needed to support Warrior's coiled-tubing and snubbing operations." ECF No. 21, at ¶ 27. She asserts:

> Based on those conversations [with managers and employees there] and the paperwork I reviewed in North Dakota, I believe that the only real difference between how things were done in Belle Vernon and how things were done in North Dakota is that North Dakota had a sizeable "safety" bonus because the work in that region was so treacherous. Other than that, I did not observe any difference in the operations or recordkeeping.

*Id.* There is nothing in that assertion (or in the rest of the Declaration) to demonstrate that snubbers in North Dakota used "small vehicles" in the same manner in which such vehicles were used in Belle Vernon, Pennsylvania. Oswald's Declaration testimony is similarly lacking. She claims that she talked to "other Snubbers" who worked in other districts and that, "[f]rom those conversations, I understood that Warrior did snubbing pretty much the same way everywhere." ECF No. 22, at ¶¶ 27–28.[10] She admits that, while she was given the opportunity to travel to Texas to do some snubbing, she "chose not to" because she wanted to stay in Pennsylvania. *Id.* at ¶ 27. She thus has no firsthand, personal knowledge of the way small trucks were used (if at all) in Texas. Notice, therefore, will not be authorized for employees who worked out of the

---

[10] This kind of testimony, often relied upon (but rarely successfully), is the equivalent of a virtual layer cake of stacked hearsay. *See* Fed. R. Evid. 805.

Richardson, North Dakota district or the Decatur, Texas district on the basis of the Plaintiffs' two Declarations.[11]

Although the Declarations of Naicker and Oswald are insufficient to authorize the sending of notice to employees who worked in districts outside of Pennsylvania,[12] the Plaintiffs urge that the deposition testimony of Donald Justus, ECF No. 49, a former Vice President of Operations for Coil Tubing and Snubbing at Warrior, ECF No. 34-2, at ¶ 2, establishes the existence of similarly situated employees in other districts. But they are wrong. The Court has noted (more than once now) that a light burden does not equal a nonexistent burden. *Dunkel*, 304 F.R.D.at 202. Plaintiffs argue that "[t]here is more than enough evidence in the record to sustain a reasonable inference that snubbers in the Decatur and Richardton shops performed duties involving the safe operation of pickup trucks without receiving overtime." ECF No. 46, at 6.[13] Plaintiffs attempt to analogize to *Pereira v. Foot Locker, Inc.*, 261 F.R.D. 60 (E.D. Pa.

---

[11] The Court would also note that other former coil-tubing and snubbing employees of Warrior appear to be fairly well-covered, litigation-wise. *See, e.g., Aikins v. Warrior Energy Servs. Corp.*, No.13-54, 2015 WL 1221255, at *1 (S.D. Tex. Mar. 17, 2015) (denying summary judgment in a case involving sixty-six former Warrior employees "whose jobs involved servicing oil wells in North Dakota, Montana, and other states undergoing an oil boom").

[12] This is as good a place as any to talk about the Defendant's Motion to Strike Various Portions of the Plaintiffs' Declarations. Warrior wants the Court to strike paragraphs 22, 24, 27, 33, 35–36, 42–43, and 49–50 from Naicker's Declaration, as well as paragraph 28 of Oswald's Declaration. The basis for the Motion is that the delineated paragraphs either depend on inadmissible speculation or are inconsistent with the declarant's deposition testimony. ECF No. 33, at 3–6. Warrior asserts that "[t]hese paragraphs should either be stricken . . . or given no weight." *Id.* at 5–6. Because, for the reasons noted, the Court did not give weight for these purposes to those portions of the Declarations, Warrior's Motion to Strike will be denied as moot.

[13] Plaintiffs cite to *Bredbenner v. Liberty Travel, Inc.*, No. 09-905, 2009 WL 2391279, at *3 (D.N.J. July 31, 2009), arguing that a court must merely ask whether a plaintiffs' evidence is "sufficient to make a 'reasonable inference'" that similarly situated employees in other geographic areas also suffer from this same policy." But the court in *Bredbenner* limited the scope of FLSA notice to three states (those in which declarants worked) out of the total fourteen where the defendant operated:

> Here, Plaintiffs make an adequate showing that Liberty effectuated the same overtime practices with respect to travel agents in Delaware, New York, and Maryland. Plaintiffs proffer declarations from travel agents working for Liberty in these three states and also submit two employment agreements entered into in Delaware and New York signed by Liberty Chief Operating Officer, Cathy Pelaez. This evidence is sufficient for the Court to make a "reasonable inference" that Liberty employed a similar policy in the states where the declarants worked. However, this information is not sufficient for the Court to infer that Liberty effectuated this policy nationwide.

2009), a case that involved hourly workers at Foot Locker stores who were regularly required to perform work off the clock. The court in *Pereira* allowed nationwide "conditional certification" on the following basis:

> While the hours budget for each store is different depending on its location and sales volume, the time keeping system is uniform throughout the stores, corporate headquarters sets the hourly budget for each store and headquarters monitors any overages and communicates with managers in this regard.

*Id.* at 65–66. The situation described by that court—one of a corporate policy uniformly filtered down to all stores regardless of location—shows a uniformity not present in this case.

Unlike the plaintiffs in *Pereira*, the Plaintiffs here have not presented a corporate policy universally requiring snubbers to make hot shots and fuel runs or demonstrating that they in actuality do so. The deposition of Donald Justus, far from establishing consistency of small vehicle use (the binding feature of the alleged FLSA violation in this case) among districts, actually seems to indicate the opposite. For example, Mr. Justus testified that snubbers "[h]ad no reason to leave location for supplies," not even for hotshots. ECF No. 50, at 17. Aside from a "catastrophic breakdown," such as an "engine failure on the snubbing unit, which didn't happen," there would be no reason for snubbers to leave a job location. *Id.* at 17. Rather, "they had spare parts. They had a list of inventory. The truck was loaded. The trailer was loaded. They knew what the job was when they went out there. There should have been no reason to go get mechanical parts or any other parts . . . ." *Id.* Justus testified that, while snubbers working out of the Decatur, Texas district *could* be called upon to drive a "small vehicle" by a supervisor, it was not essential that every snubber be able to drive pick-up trucks. *Id.* at 21.[14]

---

*Id.* (citations omitted). In other words, evidence of a common policy in three states did not allow for a conclusion that such common policy existed in all fourteen. To conclude otherwise here would be to commit the fallacy of hasty generalization.

[14] The Court notes that Mr. Justus's answers do not exclude the possibility that snubbers in the Decatur district used "small vehicles" in a way that would make them "similarly situated" to the Plaintiffs for these purposes, but also, by

Similarly, Mr. Justus explained that in the Decatur district, during the relevant time period, fuel was delivered to the job locations by third party vendors:

> Diesel fuel was at a premium at that time. We were allowed to charge back the customer for the fuel plus about a 40-percent profit. Customers at that point in time got contracts with their own fuel suppliers and fuel trucks were on location. Customer paid for fuel. We could not charge them back. . . . All of [the customers] had them. Anyplace where frac was working, that was the driving force because there's so many engines on location for the frac. The customer had the agreements with the fuel supplier. Not us. If we were on location, a fuel truck came out, we were allowed to fill up.

*Id.* at 26. So Mr. Justus's testimony does not appear to establish that snubbers in the Decatur district made regular fuel runs in "small vehicles." Mr. Justus's testimony does not constitute sufficient evidence for this Court to conclude that employees in the Decatur district[15] used "small vehicles" in such a way that would make them "similarly situated" for the purposes of notice. Therefore, on the record before the Court, notice will be limited to the Belle Vernon, Pennsylvania district.

### III. NOTICE

"The Supreme Court has held that district courts have broad discretion under FLSA to facilitate notice to potential collective action plaintiffs." *Bath v. Red Vision Sys., Inc.*, No. 13-02366, 2014 WL 2436100, at *7 (D.N.J. May 29, 2014) (citing *Hoffmann–La Roche v. Sperling*, 493 U.S. 165, 169 (1989)). "By monitoring preparation and distribution of the notice, a court can ensure that it is timely, accurate, and informative." *Hoffmann-La Roche*, 493 U.S. at 172.

At oral argument on March 24, 2015, the Court instructed the parties to confer about the form and content of the notice to be sent to the potential opt-ins. Consistent with that instruction,

---

the same token, that testimony does not support a conclusion that they did. In other words, Mr. Justus's testimony does not affirmatively establish that snubbers in the Decatur district *did not* use "small vehicles" in their work. But neither does his testimony establish that they *did*. For that reason, the court's denial of "conditional certification" as to employees in Decatur, Texas is, at this point, without prejudice.

[15] And there does not appear to be anything substantive at all in his deposition about the Richardson, North Dakota district.

9

the Court will order that the parties file a Joint Motion for Approval of Court-Facilitated Notice on or before May 8, 2015. Because the parties have already been down this road once, the Court anticipates that the journey the second time around will be swifter and less fraught with peril.

### IV. <u>CONCLUSION</u>

Because Plaintiffs have made the requisite factual showing that certain other putative opt-in plaintiffs are similarly situated, Plaintiffs' Motion for Conditional Certification is granted, but the scope of the conditional certification (i.e., notice) is limited to those snubbing employees who worked out of the Belle Vernon, Pennsylvania district. The proposed Notice and Opt-In Consent Form should reflect that scope of the conditional certification.

An appropriate Order will follow.

_____
Mark R. Hornak
United States District Judge

Dated: April 9, 2015
cc: All counsel of record